(No. 5442—)

CHRISTINA FLAIM, Claimant, *vs.* STATE OF ILLINOIS, DEPARTMENT OF CORRECTIONS, Respondent.

*Opinion filed June 11, 1975.*

HUGH M. MATCHETT, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; ETTA COLE AND EDWARD L. S. ARKEMA, JR., Assistant Attorneys General, for Respondent.

BURKS, J.

This action, seeking damages for personal injuries sustained by the claimant, is based upon the alleged negligence of respondent's Department of Corrections in approving the parole and release of one Ronald Sledge, a juvenile, who, after his release, attacked, battered, and robbed the claimant; and that respondent knew the said parolee to be a dangerous person.

Claimant also contends that the State of Illinois is, pursuant to the *equal protection* clauses of the state and federal constitutions, under a duty to compensate innocent victims of crime "without regard to whether the state was negligent or not."

The second contention is a theory which has been specifically rejected recently by the Illinois Supreme Court. In *Inez Williams* v. *Medical Center Commission* [Docket No. 46562 Supreme Court Opinion filed March 24, 1975] Justice Schaefer analyzed similar constitutional arguments as to the State's liability and said, among other things:

"A constitutional grant of immunity to a sovereign government has never, so far as we are aware, been held to be an arbitrary classification which violates equal protection."

"The recent decision of the Supreme Court of the United States in *Edelman* v. *Jordan (1974), 415 U.S. 651, 39 L. Ed. 2d 662*, 94 S. Ct. 1347, indicates clearly, we believe, that the assertion of sovereign immunity by a State is not offensive to any provision of the Constitution of the United States."

Although it was under no legal duty to do so, the State of Illinois has now voluntarily agreed to assume some of the financial loss suffered by innocent victims of crimes by enacting the "Crime Victims Compensation Act" effective October 1, 1973, *Ill. Rev. Stat. (1973) Ch. 70 §71 et seq.* However, this gives no relief to the claimant nor any other victim of a crime committed prior to the effective date of this Act, October 1, 1973. *See §84 of the Act.* "This act applies only to injuries inflicted after the effective date of this Act."

We return now to claimant's first and basic contention, i.e., that the Youth Commission of the Department of Corrections was negligent in granting parole to Ronald Sledge who was a dangerous person. Although the alleged negligence was not proved by a preponderance of the evidence in this case, it is plausible to conclude, with the benefit of hindsight, that the officials responsibile for paroling Ronald Sledge made an error in judgment.

It is well-established law in Illinois that public officials are immune from liability for performing discretionary functions. The rationale for such immunity was

best expressed by Judge Learned Hand in *Gregoire* v. *Biddle, 177 F. 2d 579, 581, 2nd Cir. 1949:*

"It is thought to be better to leave unredressed those wrongs done by dishonest [or negligent] officials than to subject those who try honestly to perform their duty to the constant fear of retaliation."

In *Lusietto* v. *Kingan, 107 Ill.App. 239 (1969)*, the court noted (at page 245) that an immunity exists in favor of public officials when they are exercising their official discretion on matters which are discretionary in nature. In *Kelly* v. *Ogilvie, 64 Ill.App. 2d 144 (1965), Aff. 35 Ill. 2d 297 (1966)*, this doctrine of quasi judicial immunity was more fully expounded. See also *Barr* v. *Mateo, 360 U.S. 564 (1959)*. This doctrine, well established and of long standing in Illinois, states that, where official action is the result of judgment or discretion, it is judicial and immune from liability. *People* v. *Bartel, 138 Ill. 332; McCormick* v. *Burt, 95 Ill. 263*. As the Court said in *Kelly* v. *Ogilvie* (Supra) at page 147:

"This doctrine rests on the principle that the public decision maker, like the judge, ought to be shielded from personal liability or other factors extraneous to a judgment based on his best perception of public needs."

Since public officials are immune from liability under Illinois law for negligence in the performance of discretionary duties, their principal, the State, is similarly immune under the doctrine of respondeat superior.

Moreover, at the time of claimant's injuries, there was in effect a statute specifically exempting a public employee or a local public entity from liability from "any injury resulting from determining to parole or release a prisoner." *Ill.Rev.Stat. (1965) Ch. 85 §4-106* effective August 13, 1965:

"§4—106. Parole—Escaped prisoners

Neither a local public entity nor a public employee is liable for:

"(a) Any injury resulting from determining to parole or release a prisoner, to revoke his parole or rlease, or the terms and conditions of his parole.

(b) Any injury inflicted by an escaped or escaping prisoner."

Although the above statute specifically applies to local governmental units, it is a declaration by the General Assembly as to the public policy of this State controlling the precise issues presented in the case at bar. In determining to parole a prisoner, government officials are performing a discretionary duty or function. Such officials and their governmental unit are excused by law from any liability for any injuries that might result from the exercise of such discretionary power.

It was not necessary for the State to be included in the "Local Governmental and Governmental Employees Tort Immunity Act." The sovereign immunity of the State, except as such immunity is specifically waived by the General Assembly, rests firmly on sound constitutional grounds according to recent decisions of the Illinois Supreme Court in *Inez Williams* v. *Medical Center Commission* (Supra) and according to the U.S. Supreme Court in Edelman v. Jordan (Supra) and *Krause v. Ohio, U.S. Supreme Court Reports 34 L.Ed. 2d 506.* Same case below, *31 Ohio St 2d 132, 60 Ohio Ops 2d 100, 285 N.E. 2d 736* contains an exhaustive treatise on the subject of a state's sovereign immunity confirmed by the U.S. Supreme Court in 1972.

By contrast, the immunity once claimed by units of local government was judicially abolished in *Molitor* v. *Kaneland Community Unit District No. 302 (1959), 18 Ill. 2d 11, Harvey* v. *Clyde Park District (1964), 32 Ill. 2d 60*, and other subsequent opinions.

"Those opinions, however, [quoting our high court in *Inez Williams* (Supra)] did not involve the sovereign immunity of the State or the validity of the *Court of Claims Act*, questions which were thoroughly threshed out in the recent constitutional convention. The present language of §4 of Article XIII—'Except as the General

Assembly may provide by law, sovereign immunity in this State is abolished'—was adopted only after the defeat of an amendment which would have limited the power of the General Assembly to the provision of a special forum, and would have eliminated its authority to restrict the right of trial by jury and to impose time limitations and limitations upon the amount of recovery. (*5 Record of Proceedings, Sixth Illinois Constitutional Convention 3948-3952.*)"

The State's liability is no greater, and its immunity is certainly no less, under existing law, than that of local governmental units which are creatures of the State. To hold the State liable for any errors in judgment by its officials, in the exercise of their discretionary decision making powers and duties, would be contrary to the public policy established by the General Assembly. This is particularly true of a decision to parole or release a prisoner, "one of the most difficult, sensitive and complicated decisions that must be made in the criminal justice system." "*Parole Decisions*" *Ill. Bar Journal, Sept. 1973, p. 20.*

For the reasons stated herein, this claim must be and is hereby denied.